IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR THE COUNTY OF HILLSBOROUGH, STATE OF FLORIDA
CIRCUIT CIVIL DIVISION

MARIO CAICEDO and CARLOS CAICEDO, JR.
as Co-Personal Representatives of
The ESTATE of CARLA STEFANIAK,

       Plaintiffs,

v.                                                                                     Case No.

AIRBNB, INC., and VILLA LE MAS a/k/a
LA MARES a/k/a VILLA BUENA VISTA,

       Defendants.
_____/

## COMPLAINT

COME NOW, the Plaintiffs, MARIO CAICEDO and CARLOS CAICEDO, JR., as Co-Personal Representatives of The ESTATE OF CARLA STEFANIAK (hereinafter referred to as Plaintiff "STEFANIAK"), by and through the undersigned counsel, and hereby sue the Defendants, AIRBNB, INC., (hereinafter referred to as "AIRBNB"), and VILLA LE MAS a/k/a LA MARES a/k/a VILLA BUENA VISTA (hereinafter referred to as "VILLA BUENA VISTA"), and allege as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this subject matter claim as same is an action for damages in an amount in excess of $15,000.00, and less than $75,000 in special damages, exclusive of all costs, interest and attorneys' fees.

2.      Venue is proper in Hillsborough County, Florida, as the business relationships and subject matter transactions accrued, and the negligent misrepresentations and improper inducements complained of occurred, in Hillsborough County, Florida; the Estate of STEFANIAK is a legal entity established in Hillsborough County Florida; the Defendant, AIRBNB, maintains presence and conducts business in

1

Hillsborough County; and Defendant, VILLA BUENA VISTA, maintains presence and conducts business in Hillsborough County, Florida.

## **PARTIES**

3.     At all times material hereto, MARIO CAICEDO and CARLOS CAICEDO, JR., and the decedent, Carla Stefaniak, were biological siblings and maintained and shared brother/sister relationships together;

4.     MARIO CAICEDO and CARLOS CAICEDO, JR., shall be appointed Co-Personal Representatives of the ESTATE of CARLA STEFANIAK, deceased, and are authorized to bring this action on behalf of the Estate and all survivors pursuant to §768.16 et. seq., Florida Statutes; said survivors are as follows:

a)     LUCIA DEL VALLE ROMERO CASTRO – natural mother;

b)     CARLOS CAICEDO, SR. – natural father

5.     At all times material hereto, Defendant, AIRBNB, is a foreign profit corporation, originally incorporated in the State of California, with parent corporation headquarters in San Francisco, and is now a Delaware corporation, headquartered in California, with Corporate Registered Agent in Florida, whose CEO, Brian Chesky, has expressly stated that the Defendant, AIRBNB, is anticipated to release an Initial Public Offering and begin trading publicly in 2019, (CNNMoney (New York), Mar 31, 2018), that through the Florida Department of State, Division of Corporations, is and was licensed to transact business in the State of Florida;

a)     that advertises, promotes, and rents real properties located in Hillsborough County and throughout counties in the State of Florida and throughout the world; and

b)     authors and sends information and emails that promote the Properties to recipients in Florida who are searching for accommodations.

2

6.      At all times material hereto, Defendant, VILLA BUENA VISTA, maintained rental resort property in a mountainous area in San Antonio de Escazú in the Escazu suburb of San Jose, Costa Rica, and marketed, promoted, and rented units within this resort directly in the state of Florida by virtue of transactions occurring in Hillsborough County and throughout counties in the State of Florida.

## GENERAL ALLEGATIONS

### Background and Overview of Operations of Defendant, AIRBNB

7.      Since the Defendant, AIRBNB, launched its business operation in 2009, it has grown to service approximately six million travelers per year by advertising, promoting, listing, and renting approximately 800,000 properties owned by third parties in approximately 81,000 cities all over the world. Per Defendant, AIRBNB, there are nearly 5 million listings in 191 countries made available through these services.  See https://www.airbnb.com/trust.

8.      Defendant, AIRBNB, operates as a brokerage marketplace that coordinates for property owners called "hosts" to make their properties or spare rooms or units available for rent to customers called "guests".

9.      Defendant, AIRBNB, earns 3% commission of every booking from hosts, and between 6% and 12% from guests.

10.      Defendant, AIRBNB, solicits information from hosts and guests and combines that information with Airbnb-created content to create a listing in a standardized format developed by Airbnb and governed by Airbnb's Content Policy to promote and advertise and list properties based on search criteria, including such distinctions as whether the property provides a shared room to an entire house, to having a swimming pool, to having a washing machine. There are photos of the property, and the hosts/guests, with full map listing.

3

11.     While there is generally no duty to protect others from the criminal activity of third persons, when a duty to protect others against such criminal conduct has been assumed, liability may be created by the negligent breach of that duty. Harris, 455 So.2d at 1364.

a)     Dean Prosser, in examining responsibility for intentional torts, explains situations which may give rise to liability. In his treatise he writes:

> There are, however, other situations, in which either a special responsibility resting upon the defendant for the protection of the plaintiff, or an especial temptation and opportunity for criminal misconduct brought about by the defendant, will call upon him to take precautions against it. ***The responsibility for protection may arise out of a contract, by which the defendant has agreed to provide it; or it may be founded upon some relation existing between the parties***, such as carrier and passenger, innkeeper and guest, ***invitor and business visitor***, school and pupil, employer and employee, landlord and tenant, and no doubt others. The carrier, for example, may be required to protect its passengers from third persons who have threatened them with violence, or are drunk or quarrelsome, or to guard or warn them against external attack or look after its switches in a neighborhood which is known to be frequented by criminal characters. Another possibility is that the defendant's special responsibility may arise because he is in a position to control the dangerous person, or is in some other unique position to prevent the harm, and so may be held to have an obligation to exercise reasonable care to do so.
>
> There are other situations in which the defendant will be held liable because his affirmative conduct has greatly increased the risk or harm to the plaintiff through the criminal acts of others. The defendant may bring the plaintiff into contact with individuals of known criminal tendencies, as for example, by hiring them under conditions in which opportunity for crime is afforded [emphasis added].
>
> *Prosser and Keeton on Torts*, Sec. 33, p. 201–203 (West)

b)     Airbnb's business involves sending its guests directly into premises owned and controlled by individuals unknown to the guests.

c)     For this service Airbnb is compensated and earns profits.

d)     Airbnb's duty in these situations is to exercise reasonable care and due diligence with respect to those premises which it promotes.

e)     Airbnb has recognized these duties and made express representations that it has instituted security measures to prevent harm to to its customers.

4

12.     As part of its business strategy to earn profits from both hosts and guests, Defendant, AIRBNB, induces hosts to list their properties with Defendant, AIRBNB, and induces guests to rent these properties from Defendant, AIRBNB, by representing to consumers that Defendant, AIRBNB, is systematically investigating hosts and guests and properties by expressly advising consumers:

a)     that "Trust & Safety" and "Your safety is our priority" [see https://www.airbnb.com/trust];

b)     that Defendant, AIRBNB, provides "Safety by design" and that "Airbnb is designed with safety—both online and off—in mind" [see https://www.airbnb.com/trust];

c)     that Defendant, AIRBNB, provides "Risk scoring" and that "Every Airbnb reservation is scored for risk before it's confirmed. We use predictive analytics and machine learning to instantly evaluate hundreds of signals that help us flag and investigate suspicious activity before it happens" https://www.airbnb.com ];

d)     that Defendant, AIRBNB, provides "Watchlist & background checks" and "globally we run hosts and guests against regulatory, terrorist, and sanctions watchlists" and "we also conduct background checks" [https://www.airbnb.com/trust];

e)     that "…[E]very traveler has our global community to rely on. If they want to see what previous guests have thought about a potential host or home, all they need to do is check the ratings and reviews. Guests and hosts publicly review each other, and only after the stay is complete, so the feedback is informed and real.";

f)     that "Airbnb is committed to earning the trust and ensuring the safety and security of its global community.";

g)     that "Airbnb's commitment to the safety and security of guests and hosts includes a global team of safety and security experts and a full range of safety practices including reviews, insurance, a host guarantee, and 24/7 global response and assistance." ;

5

h)      that "At the foundation of that commitment is Airbnb's robust Trust and Safety team, which is comprised of a range of 24/7 response agents, engineers, data scientists, product managers, designers, law-enforcement liaisons, crisis managers, and victim-advocacy specialists. That's in addition to the company's deep bench of experts in policy, privacy, cyber security, insurance, and fraud issues.";

i)      that Defendant, AIRBNB, presents Nick Shapiro to the consuming public as the "Global Head of Trust and Risk Management at Airbnb". Promotional materials generated by Defendant, AIRBNB, provide that "Shapiro previously served as the Deputy Chief of Staff of the CIA and Senior Advisor to former CIA Director John Brennan. He was also on the National Security Council staff and served as a White House homeland security and counter terrorism aide to President Obama.";

j)      that Defendant, AIRBNB, and Nick Shapiro "…work day in and day out to mitigate…risk" and "build a safe and trusted environment for travelers.";

k)      that Defendant, AIRBNB, maintains that "First, safety is fundamental. …Next, we need to maximize transparency so that travelers know exactly what they're getting…. Finally, we need our community to know they are not alone—no matter what happens—we have a dedicated team standing by 24/7 to help resolve any issues that might arise….[W]ith Airbnb, they are safe….";

l)      In an interview with Bloomberg News, Mr. Shapiro expressly stated that:

(i) while consumers are experiencing "a crisis of distrust" in mainstream institutions,

(ii) "they're [consumers are] trusting each other more" and that "Airbnb was designed specifically…to leverage that new phenomenon…." (https://www.youtube.com/watch?v=b5_vknirzSw);

m)      that Defendant, AIRBNB, maintains "Global hospitality standards" and requires that "All hosts must maintain a minimum rating and our hospitality standards to be on Airbnb". https://www.airbnb.com];

13.     Defendant, AIRBNB, provides "guarantees" and "insurance" coverage to Hosts and Tourists to build trust and encourage them to book Owners' properties;

6

14.     Defendant, AIRBNB, processes all payments that that comprise the listing, renting, booking, and payment for the properties;

15.     Defendant, AIRBNB, sets the price of listings with a "Smart Pricing" algorithm that automatically adjusts prices to match demand;

16.     Defendant, AIRBNB, keeps the property location "confidential until a booking is confirmed" and then Defendant, AIRBNB, itself discloses the address to the guest, thus preventing the guest from performing his/her own due diligence and investigation;

17.     Defendant, AIRBNB, enters into contracts with third-party owner "hosts" and with "guests" and actively conceals the identities of breaching owner "hosts" and "guests";

18.     Defendant, AIRBNB, does not warn owner "hosts" and "guests" of all negative circumstances and incidents that it becomes aware of by third-party reporting;

19.     Defendant, AIRBNB, possesses actual and/or constructive notice that there exists "a significant, positive spatial relationship between Airbnb and crimes", *Xu, Kim, Pennington-Gray, Explore the Spatial Relationship between Airbnb Rental and Crime, 2017 Travel Tourism Research Association International Conference, University of Massachusetts, Amherst;*

20.     Defendant, AIRBNB, possesses actual and/or constructive notice of facilitating sexually based transgressions through its property sharing services.  Mike McPadden, AIRBN-BAD BEHAVIOR: 5 SEX CRIMES COMMITTED BY AIRBNB USERS, September 28, 2016;

**Background and Overview of Operations of the joint venture of Defendants, VILLA BUENA VISTA, together with AIRBNB**

21.     Defendant, VILLA BUENA VISTA, is a 7 unit building and grounds located at Calle Hoja Blanca, San Antonio, Escazu 1260, Costa Rica;

22.     The property is two and a half acres located within tropical gardens that minimize visibility with the vacation rentals scattered about walkways through these gardens. The location and

7

property is relatively private and secluded, stationed some 15 minutes from consumer activity of shopping and restaurants, with limited supervision and oversight. Both Defendant, VILLA BUENA VISTA, and Defendant, AIRBNB, expressly promote that the location provides qualified "24/7 guard service for the safety of our guests and their property.";

23.     Prior to 2013, at which time the present owners, including Raymond Simons, took control over the day-to-day operations and utilized Defendant, AIRBNB, to serve as the facility's primary means of advertising, promoting, and transacting rental business of the premises, the facility had served as a convalescent location for foreign nationals travelling to Costa Rica for dental and medical procedures. Prior to 2013, the facility—then called VILLA DE MAS--employed health care advocates who assisted the patients/guests garner the necessary post-operative care and treatment to achieve medical improvement and sufficient medical stability to withstand the rigors of return travel to their homes;

24.     While defendant, AIRBNB, posted complimentary and positive reviews of the resort property and its hosts, there are and were multiple reports since 2013 of guests who encountered bad experiences and recounted being victimized by personnel affiliated with the resort that Defendant, AIRBNB, sanitized from its own promotions and advertising materials. These negative incidents include:

a)     a female Canadian tourist who described that she had been financially victimized by the facility and its hosts and reports her "stay at this place was a complete nightmare.";

b)     an Alaskan traveler reported "We had made reservations to stay 2 nights at Villa Le Mas, aka Villa Palma Real….The host was most rude and Raymond [the host] our money hostage.";

c)     another family reported "the owner got very *abusive* to both my son and I.";

25.     The U.S. Department of State has for a number of years prior to 2018 issued opinions through its Bureau of Consular Affairs that in Costa Rica, "Violent crime, such as armed robbery and assault, is common. Local police lack the resources to respond effectively to serious criminal incidents";

However, Defendants provided no such warnings of these perils and dangers of which Defendants possessed actual and/or constructive knowledge;

26.     In April 2018, the U.S. Department of State Bureau of Diplomatic Security Travel Advisory published its findings concluding that "The U.S. Department of State has assessed [the region within Costa Rica] as being a **HIGH**-threat location for crime." However, Defendants provided no such warnings of these perils and dangers of which Defendants possessed actual and/or constructive knowledge;

27.     In early 2018, The U.S. Embassy in Costa Rica indicated "Crime is increasing in Costa Rica and U.S. citizens are frequent victims" and published reports of "Several rental homes and eco-lodges were invaded by groups of masked men armed with machetes and guns. U.S. citizens were assaulted and held hostage at gunpoint for several hours while" crimes were committed. However, Defendants provided no such warnings of these perils and dangers of which Defendants possessed actual and/or constructive knowledge;

**The Carla Stefaniak Tragedy**

28.     Prior to November 28, 2018, while physically present in the state of Florida, the decedent Carla Stefaniak responded to business advertisements and promotions of the Defendants, that were intentionally disseminated by these Defendants in the state of Florida, and Stefaniak and the Defendants entered into a contract in the state of Florida, and Stefaniak paid financial consideration to Defendants in the state of Florida, for the purpose of renting a unit in San Antonio de Escazú;

29.     In November 2018, Stefaniak travelled to Costa Rica to tour the country with her sister-in-law April Caicedo in observance of Stefaniak's 36th birthday;

30.     On November 27th, Stefaniak checked into the Costa Rica Airbnb rental villa in accordance with her agreements with Defendants AIRBNB and VILLA BUENA VISTA;

9

31.     Bismark Espinosa Martinez is a Nicaraguan immigrant who has lived in Costa Rica since June 2018;

32.     Bismark Espinosa Martinez worked on behalf of Defendants, AIRBNB and VILLA BUENA VISTA, by virtue of his employment as security guard at the Costa Rica Airbnb rental villa (VILLA BUENA VISTA) and at all times served as an apparent and/or actual agent of Defendants, AIRBNB and VILLA BUENA VISTA, and was furnished with full access to all rental units at the Costa Rica Airbnb resort and provided with the cloak of officiality and authority of Defendants, AIRBNB and VILLA BUENA VISTA, by providing him:

   a)     an official uniform;

   b)     master pass keys to all areas, spaces, and units within the complex; and

   c)     express authority and permission to enter guest villas at his discretion and without any supervision.

33.     As part of Martinez' compensation package as a security guard at the Costa Rica Airbnb rental villa, he was provided with his own apartment at the premises;

34.     Martinez' apartment was located directly next to the unit rented by Ms. Stefaniak from Defendants, AIRBNB and VILLA BUENA VISTA;

35.     Defendants, AIRBNB and VILLA BUENA VISTA, took no action to prevent Martinez from being provided full access to all units at the Costa Rica Airbnb resort;

36.     Bismark Espinosa Martinez lacked documentation and legal authorization for employment, and lacked documentation and legal authorization for even physical presence, in Costa Rica;

37.     Defendants, AIRBNB and VILLA BUENA VISTA, negligently failed to perform any kind of background check or otherwise take any measures to determine whether Martinez was fit for the officiality and authority and power and control provided to him;

38.     On November 27, and November 28, 2018, the decedent, Carla Stefaniak, was a guest of VILLA BUENA VISTA and a business invitee of Defendants, AIRBNB and VILLA BUENA VISTA;

39.     An Uber driver took STEFANIAK on a tour of San Jose, then dropped her off at the Airbnb villa around 5 p.m. on November 27, 2018--her last scheduled night of her trip.  Ms. Stefaniak was scheduled to return to Florida by airplane on November 28, 2018;

40.     San Jose was under heavy rain on November 27th and November 28th and electrical power at the Airbnb villa was available only intermittently;

41.     On the evening of November 27th, Carla Stefaniak communicated with friends and family by means of text messaging and FaceTime, and indicated that it was her intention to go to the guard gate to find some drinking water as services at the villa were interrupted as a result of weather conditions;

42.     At or about 9:30 PM, Ms. Stefaniak was communicating via FaceTime with a friend in the United States when the communication signal was interrupted;

43.     Carla Stefaniak never boarded her November 28th return flight after messaging friends that it was "pretty sketchy" at the resort and Stefaniak's family notified Costa Rican authorities after she did not board her flight home the next day after checking in online.

44.     After a worldwide search that spread through social media with the hashtag identifier "#FindingCarla", Ms. Stefaniak's partially nude body was discovered December 3, 2018;

45.     Search dogs found the partially decomposed body of Stefaniak, wrapped in plastic bags and half-buried, in woods near the Airbnb apartment she rented;

46.     An autopsy revealed that Stefaniak suffered a blunt force trauma to her head and lacerations on her neck and arms;

47.     Police discovered what appeared to be blood in the Airbnb villa apartment where Stefaniak stayed and analyzed surveillance video from the apartment complex;

11

48.     On November 28, 2018, while the decedent, Carla Stefaniak, was a guest of VILLA BUENA VISTA and a business customer of Defendants, AIRBNB and VILLA BUENA VISTA, she was killed by security guard Bismarck Espinosa Martinez while Martinez was "on duty" on behalf of Defendants, AIRBNB and VILLA BUENA VISTA;

49.     Forensic analysis of the body suggests that multiple persons were involved in removing and disposing Carla Stefaniak's body from the Airbnb villa;

50.     This Court has jurisdiction over this subject matter claim as same is an action for damages in an amount in excess of $15,000.00, and less than $75,000 in special damages, exclusive of all costs, interest and attorneys' fees.

## COUNT I – NEGLIGENCE AGAINST
## VILLA BUENA VISTA

51.     Pursuant to Fla. R. Civ. P. 1.130(b), Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein;

52.     At all times material hereto, Defendant, VILLA BUENA VISTA, owed a duty to maintain its premises, in a reasonably safe condition, and to take reasonable care for the safety of Stefaniak and protect her from reasonably foreseeable criminal conduct by third parties and employees and agents, such as MARTINEZ, and to protect the Stefaniak from being harmed by such persons, and further had a duty to implement policies and procedures to protect guests, such as Stefaniak;

53.     At all times material hereto, Defendant, VILLA BUENA VISTA, knew or should have known of the potential danger in facilitating MARTINEZ's un-supervised access to vulnerable women guests in a private setting;

54.     Defendant, VILLA BUENA VISTA, knew or should have known that there is an industry recognized increased danger for unaccompanied women at a tourist resort as employees have access to women alone and away from their homes, their companions, family and friends, in secluded and

12

unfamiliar settings where opportunity is provided for predators to commit crimes against, and/or harm to, their persons and property;

55.     At the time of the subject matter death, Defendant, VILLA BUENA VISTA, conducted no criminal background checks on its staff and/or apparent agents and any background checks that were performed were insufficient;

56.     Stefaniak was vulnerable to Martinez by virtue of his apparent and/or actual authority of the Defendants, and MARTINEZ gained access to closer contact with the Plaintiff as the direct result of his employment and apparent agency of Defendants;

57.     Defendant, VILLA BUENA VISTA, received some benefit, including potential or indirect benefit, by the contact between the plaintiff and MARTINEZ, and there exists a duty to exercise reasonable care for the protection of guests to permit only those employees who, so far as can be reasonably ascertained, pose no threat to such guests, Defendant, VILLA BUENA VISTA, failed to warn Stefaniak of such danger and failed to protect Stefaniak from such danger;

58.     Defendant, VILLA BUENA VISTA, breached the above referenced duties owed to Stefaniak as an inn keeper, and as result thereof, Stefaniak was killed; and

59.     That as a direct and proximate result of Defendant's, VILLA BUENA VISTA, breach of duties owed to Stefaniak described herein, the Estate has suffered loss of net accumulations and the statutory survivors have suffered the loss of support and services and mental pain and suffering as a result of the injury and death of their child;

WHEREFORE, Plaintiffs seek judgment for damages in excess of Fifteen Thousand Dollars against the Defendant, VILLA BUENA VISTA, plus costs and a trial by jury on all issues so triable.

## COUNT II – VICARIOUS LIABILITY of
## VILLA BUENA VISTA

60.     Pursuant to Fla. R. Civ. P. 1.130(b), Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein;

13

61.     At all times material, Defendant, VILLA BUENA VISTA, employed MARTINEZ, and/or otherwise vested him with apparent or actual authority of Defendant, VILLA BUENA VISTA. MARTINEZ was acting under Defendant's, VILLA BUENA VISTA, direct supervision, employ, and control when he committed the wrongful and negligent acts described herein.  MARTINEZ engaged in this conduct while acting in the course and scope of his employment and/or apparent agency and/or actual agency with Defendant, VILLA BUENA VISTA, and/or accomplished the subject matter killing by virtue of his job-created apparent authority;

62.     Defendant, VILLA BUENA VISTA, granted MARTINEZ authority to perform as an agent within the Airbnb villa resort and otherwise held MARTINEZ out to the community as a fit and competent agent of the resort.  MARTINEZ committed the acts alleged within the apparent authority arising from his agency. Said conduct was undertaken in the course and scope of MARTINEZ's employment and/or agency with the Airbnb villa resort and/or was ratified by Defendant, VILLA BUENA VISTA;

63.     MARTINEZ was acting at least in part to serve the interests of Defendant, VILLA BUENA VISTA, when he committed the subject matter killing.  Specifically, MARTINEZ was acting as an agent, as well as using the trust, power and authority of the position granted, while he was with the decedent. Simultaneously, MARTINEZ used that same power and authority to gain decedent's confidence and trust and to take her life;

64.     The harm to Stefaniak caused by MARTINEZ was a foreseeable and well-known hazard of the industry;

65.     MARTINEZ conducted his tortious conduct during his agency relationship with Defendant, VILLA BUENA VISTA, while within the course and scope of his agency and employment, and Defendant, VILLA BUENA VISTA, is liable for the negligent and wrongful conduct of MARTINEZ under the law of vicarious liability, including the doctrine of respondeat superior;

14

66.     As a direct result of conduct described herein, the Estate has suffered loss of net accumulations and the statutory survivors have suffered the loss of support and services and mental pain and suffering as a result of the injury and death of their child;

WHEREFORE, Plaintiffs seek judgment for damages in excess of Fifteen Thousand Dollars against the Defendant, VILLA BUENA VISTA, plus costs and a trial by jury on all issues so triable.

## COUNT III - NEGLIGENT HIRING/RETENTION
## by VILLA BUENA VISTA

67.     Pursuant to Fla. R. Civ. P. 1.130(b), Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein;

68.     By virtue of its business and legal relationships with the decedent Defendant, VILLA BUENA VISTA, owed decedent a duty to not hire and/or retain Martinez, given his dangerous and exploitive propensities, and given his lack of legal authorization to be physically present or to be employed at the Airbnb resort villa, which Defendant knew or reasonably should have known had they engaged in a meaningful and adequate investigation of his background prior to hiring him.

69.     Defendant, VILLA BUENA VISTA, expressly and implicitly represented that the official personnel providing services at the Airbnb resort villa—including Martinez--were not a sexual or physical threat to resort guests.

70.     Plaintiffs were informed and believe, and on that basis allege, that at no time during the periods of time alleged did Defendant, VILLA BUENA VISTA, have in place a system or procedure to reasonably investigate, supervise and/or monitor staff and official resort personnel to prevent criminal acts against guests, nor did they implement a system or procedure to oversee or monitor conduct toward guests;

15

71.     Defendant, VILLA BUENA VISTA, was or should have been aware and understood how vulnerable guests were to violence or abuse by security guards, staff, official personnel and other persons of authority within the control of Defendants;

72.     Plaintiffs were informed, and believe, and on that basis allege, that the Defendants were put on notice, and should have known that Martinez had previously engaged in dangerous and inappropriate conduct, and that it was, or should have been foreseeable that he was engaging, or would engage in dangerous and harmful acts against decedent, and others, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants;

73.     Defendant, VILLA BUENA VISTA, was placed on actual and/or constructive notice that Martinez had engaged in dangerous and inappropriate conduct, both before his employment within Defendants, and during that employment. Plaintiffs are informed, and thereon allege, that other third parties informed Defendants of inappropriate conduct committed by Martinez;

74.     Even though Defendant, VILLA BUENA VISTA, knew or should have known of these activities by Martinez, Defendants failed to use reasonable care in investigating Martinez and did nothing to investigate, supervise or monitor Martinez to ensure the safety of guests at the Airbnb resort villa;

75.     Defendants' conduct was a breach of their duty to decedent Stefaniak;

76.     As a direct result of conduct described herein, the Estate has suffered loss of net accumulations and the statutory survivors have suffered the loss of support and services and mental pain and suffering as a result of the injury and death of their child.

WHEREFORE, Plaintiffs seek judgment for damages in excess of Fifteen Thousand Dollars against the Defendant, VILLA BUENA VISTA, plus costs and a trial by jury on all issues so triable.


## COUNT IV – NEGLIGENCE AGAINST AIRBNB

16

77.     Pursuant to Fla. R. Civ. P. 1.130(b), Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein;

78.     At all times material hereto, Defendant, AIRBNB, assumed and/or owed a duty to take reasonable care for the safety of its customers, including Stefaniak and to protect her from reasonably foreseeable criminal conduct by third parties and employees and agents, such as MARTINEZ, to provide sufficient warning of the risk of harm, and to protect the Stefaniak from being harmed by such persons;

79.     At all times material hereto, Defendant, AIRBNB, knew or should have known of the potential danger in facilitating MARTINEZ's un-supervised access to vulnerable women guests in a private setting;

80.     Defendant, AIRBNB, knew or should have known that there is an industry recognized increased danger for unaccompanied women at a tourist resort as employees have access to women alone and away from their homes, their companions, family and friends, in secluded and unfamiliar settings where opportunity is provided for predators to commit crimes against, and/or harm to, their persons and property;

81.     At the time of the subject matter death, Defendant, AIRBNB, conducted no criminal background checks on staff and/or apparent agents and any background checks that were performed were insufficient;

82.     Stefaniak was vulnerable to Martinez by virtue of his apparent and/or actual authority of the Defendants, and MARTINEZ gained access to closer contact with the Plaintiff as the direct result of his employment and apparent agency of Defendants;

83.     Defendant, AIRBNB, received some benefit, including potential or indirect benefit, by the contact between the plaintiff and MARTINEZ, and there exists a duty to exercise reasonable care for the protection of guests to permit only those employees who, so far as can be reasonably ascertained, pose no

17

threat to such guests. Defendant, AIRBNB, failed to warn Stefaniak of such danger and failed to protect Stefaniak from such danger;

84.     Defendant, AIRBNB, breached the above referenced duties owed to Stefaniak, and as result thereof, Stefaniak was killed;

85.     That as a direct and proximate result of Defendant's, AIRBNB, breach of duties owed to Stefaniak described herein, the Estate has suffered loss of net accumulations and the statutory survivors have suffered the loss of support and services and mental pain and suffering as a result of the injury and death of their child.

WHEREFORE, Plaintiffs seek judgment for damages in excess of Fifteen Thousand Dollars against the Defendant, AIRBNB, plus costs and a trial by jury on all issues so triable.

## COUNT V – VICARIOUS LIABILITY of AIRBNB

86.     Pursuant to Fla. R. Civ. P. 1.130(b), Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein;

87.     At all times material, Defendant, AIRBNB, employed MARTINEZ, and/or otherwise vested him with apparent or actual authority of Defendant, AIRBNB. MARTINEZ was acting under Defendant's, AIRBNB, direct supervision, employ, and control when he committed the wrongful and negligent acts described herein. MARTINEZ engaged in this conduct while acting in the course and scope of his employment and/or apparent agency and/or actual agency with Defendant, AIRBNB, and/or accomplished the subject matter killing by virtue of his job-created apparent authority;

88.     Defendant, AIRBNB, granted MARTINEZ authority to perform as an agent within the Airbnb villa resort and otherwise held MARTINEZ out to the community as a fit and competent agent of the resort. MARTINEZ committed the acts alleged within the apparent authority arising from his agency.

18

Said conduct was undertaken in the course and scope of MARTINEZ's employment and/or agency with the Airbnb villa resort and/or was ratified by Defendant, AIRBNB;

89.     MARTINEZ was acting at least in part to serve the interests of Defendant, AIRBNB, when he committed the subject matter killing.  Specifically, MARTINEZ was acting as an agent, as well as using the trust, power and authority of the position granted, while he was with the decedent. Simultaneously, MARTINEZ used that same power and authority to gain decedent's confidence and trust and to take her life;

90.     The harm to Stefaniak caused by MARTINEZ was a foreseeable and well-known hazard of the industry;

91.     MARTINEZ conducted his tortious conduct during his agency relationship with Defendant, AIRBNB, while within the course and scope of his agency and employment, and Defendant, AIRBNB, is liable for the negligent and wrongful conduct of MARTINEZ under the law of vicarious liability, including the doctrine of respondeat superior;

92.     As a direct result of conduct described herein, the Estate has suffered loss of net accumulations and the statutory survivors have suffered the loss of support and services and mental pain and suffering as a result of the injury and death of their child;

WHEREFORE, Plaintiffs seek judgment for damages in excess of Fifteen Thousand Dollars against the Defendant, AIRBNB, plus costs and a trial by jury on all issues so triable.

## COUNT VI - NEGLIGENT HIRING/RETENTION
### by AIRBNB

93.     Pursuant to Fla. R. Civ. P. 1.130(b), Plaintiffs re-allege and re-aver the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein;

94.     By virtue of its business and legal relationships with the decedent and codefendants, Defendant, AIRBNB, owed decedent a duty to prevent Martinez from being vested with authority and to prevent the facilitation of his ability to harm decedent, given his dangerous and exploitive propensities, and given his lack of legal authorization to be physically present or to be employed at the Airbnb resort villa, which Defendant, AIRBNB, knew or reasonably should have known had they engaged in a meaningful and adequate investigation of his background;

95.     Defendant, AIRBNB, expressly and implicitly represented that the official personnel providing services at the Airbnb resort villa—including Martinez--were not a sexual or physical threat to resort guests;

96.     Plaintiffs were informed and believe, and on that basis allege, that at no time during the periods of time alleged did Defendant, AIRBNB, have in place a system or procedure to reasonably investigate, supervise and/or monitor staff and official resort personnel to prevent criminal acts against guests, nor did they implement a system or procedure to oversee or monitor conduct toward guests;

97.     Defendant, AIRBN,B was or should have been aware and understood how vulnerable guests were to violence or abuse by security guards, staff, official personnel and other persons of authority within the control of Defendants;

98.     Plaintiffs are informed, and believe, and on that basis allege, that the Defendants were put on notice, and should have known that Martinez had previously engaged in dangerous and inappropriate conduct, and that it was, or should have been foreseeable that he was engaging, or would engage in dangerous and harmful acts against decedent, and others, under the cloak of his authority, confidence, and trust, bestowed upon him through Defendants;

99.     Defendant, AIRBNB, was placed on actual and/or constructive notice that Martinez had engaged in dangerous and inappropriate conduct, both before his employment within Defendants, and

20

during that employment. Plaintiffs were informed, and thereon allege, that other third parties informed Defendants of inappropriate conduct committed by Martinez;

100.     Even though Defendant, AIRBNB, knew or should have known of these activities by Martinez, Defendant failed to use reasonable care in investigating Martinez and did nothing to investigate, supervise or monitor Martinez to ensure the safety of guests at the Airbnb resort villa;

101.     Defendants' conduct was a breach of their duty to decedent Stefaniak;

102.     As a direct result of conduct described herein, the Estate has suffered loss of net accumulations and the statutory survivors have suffered the loss of support and services and mental pain and suffering as a result of the injury and death of their child.

WHEREFORE, Plaintiffs seek judgment for damages in excess of Fifteen Thousand Dollars against the Defendant, AIRBNB, plus costs and a trial by jury on all issues so triable.

## COUNT VII – RICO CIVIL ACTION
## against AIRBNB

103.     Pursuant to Fla. R. Civ. P. 1.130(b), Plaintiff re-alleges and re-avers the allegations contained in Paragraphs 1 through 50 above as though fully set forth herein, and further allege that these actions of the defendants constitute an "enterprise" pursuant to 18 U.S.C. §§ 1962;

104.     At all times material hereto, the actions of Defendant, AIRBNB, as set forth herein constitute unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d);

105.     Airbnb, is a catalyst for failure to comply with laws, rules and/or regulations;

106.     While Defendant, AIRBNB, requires hosts to represent and warrant that their listings do not breach condominium, lease or rental agreements or homeowners' association pacts and that the hosts comply with zoning and other applicable laws, Defendant, AIRBNB, takes no measures to confirm compliance, intentionally ignores violations, and pretends it possesses no knowledge of said violations;

21

107.    Defendant, AIRBNB, charges a percentage from hosts and renters, but does not pay accommodation taxes;

108.    Defendant, AIRBNB, under its terms of service, does not require its accommodation members to adopt safety, privacy and cleanliness standards;

109.    Defendant, AIRBNB, takes no measures to confirm compliance with regulations accommodating those with disabilities;

110.    With respect to Airbnb units and properties not located in a zoning district that permits transient occupancy and commercial use of a residential dwelling unit, Defendant, AIRBNB, is aiding and abetting wrongful activity;

111.    Defendant, AIRBNB, is operating a continuing enterprise by effectively converting residential apartments into hotel rooms without a zoning variance or an occupancy permit and without complying with any applicable regulatory standards;

112.    The specific wrongdoers, other than the formal party Defendants listed above, include but are not limited to:

    a)    Nick Shapiro, an Airbnb corporate officer;

    b)    Brian Chesky, an Airbnb corporate officer;

    c)    Nathan Blecharczyk, an Airbnb corporate officer;

    d)    Joseph Gebbia, an Airbnb corporate officer;

    e)    Jeffrey Jordan, an Airbnb corporate officer;

    f)    Alfred Lin, an Airbnb corporate officer;

    g)    Laurence Tosi, an Airbnb corporate officer; and

    h)    Raymond Simons, owner and operator of the Defendant, VILLA BUENA VISTA.

113.     These persons, individually, and in concert with one another, commit the acts set forth in Paragraphs 1-49 herein as part of an "enterprise" and common plan for the purpose of inducing transactions and generating profits, and further:

a)     made material misrepresentations about the safety of Airbnb accommodations including the subject matter Airbnb villa resort in Costa Rica in violation of multiple state and federal statutes including , but not limited to, F.S. 817.034 and 501.201 and 559.928 and 210.65;

b)     made material misrepresentations about performing security analyses to assess risk to hosts and guests in violation of multiple state and federal statutes including , but not limited to, F.S. 817.034 and 501.201 and 559.928 and 210.65;

c)     purposefully omitted bad reviews and negative posts about hosts, guests, and properties in violation of multiple state and federal statutes including , but not limited to, F.S. 817.034 and 501.201 and 559.928 and 210.65;

d)     aided and abetted, solicited, influenced, paid, extorted and/or encouraged hosts to represent and warrant that their listings do not breach condominium, lease or rental agreements or homeowners' association pacts and that they comply with zoning and other applicable laws, including reporting revenue and making payment in accordance with tax revenue laws, in violation of multiple state and federal statutes including, but not limited to, F.S. 817.034 and 501.201 and 559.928 and 210.65;

e)     charged a percentage from hosts and renters, and collected revenue, but failed to pay accommodation taxes in violation of multiple state and federal statutes including , but not limited to, F.S. 817.034 and 501.201 and 559.928 and 210.65;

f)     made material misrepresentations of safety and alleged utilizing qualified, scientific and trustworthy "analytics"to assure patron safety, for the purpose of inducing transactions for profit in violation of multiple state and federal statutes including, but not limited to, F.S. 817.034 and 501.201 and 559.928;

23

g)     Airbnb's website claims to be "the easiest way for people to monetize their extra space and showcase it to an audience of millions." However, an increasing amount of Airbnb's activity, including the activity relating to the subject matter Defendant, VILLA BUENA VISTA, Airbnb resort villa, does not originate from the listings of "regular people" who are merely renting out a spare room. Instead, professional landlords are providing availability exclusively for tourists, and bypassing and/or intentionally violating commercial laws and regulations promulgated for the safety of patrons. Contrary to its description of promoting activities of "regular people hosting regular people Airbnb has mushroomed into a platform that provides for commercial landlords and multi-property agents to earn substantial income operating de facto hotels while violating commercial laws and regulations promulgated for the safety of patrons;

114.    These acts set forth in the preceding allegations are estimated to have been committed by the Defendant AIRBNB, and persons enumerated herein, more than thousands of times, and are furthermore continuous and have been ongoing from 2010 to present;

115.    Stefaniak's death was the direct result of Defendant AIRBNB's acts, and the result of being induced by Defendant AIRBNB, to travel to the subject matter Airbnb villa resort, to entrust her person and property to the subject matter Airbnb villa resort, and to pay a fee to Defendant AIRBNB, which was the preconceived purpose of Defendant's commission of the acts set forth herein, and the specifically intended consequences of the Defendant AIRBNB's racketeering activities;

116.    Defendant AIRBNB's racketeering activities were a substantial and foreseeable cause of Stefaniak's death and the connection between such activities and such result is logical and not speculative;

117.    Plaintiffs are unaware of whether any of the individuals listed herein, or the defendant AIRBNB, have ever been criminally convicted for violation of the predicate acts set forth and described herein;

24

118.    Plaintiffs maintain good faith information and belief that Defendant AIRBNB has been party to civil litigation that has resulted in judgments in regard to the predicate acts set forth and described herein;

119.    As a direct result of conduct described herein, the estate has suffered loss of net accumulations and the statutory survivors have suffered the loss of support and services and mental pain and suffering as a result of the injury and death of their child.

WHEREFORE, Plaintiffs seek judgment for damages in excess of Fifteen Thousand Dollars against the Defendant, AIRBNB, plus costs, treble and/or exemplary damages, attorney fees and a trial by jury on all issues so triable.

Dated this 20th day of December, 2018

  _/s/ Jeffrey "Jack" Gordon_____
JEFFREY "JACK" GORDON, ESQUIRE
MANEY|GORDON TRIAL LAWYERS
101 East Kennedy Boulevard; Suite 1700
Tampa, Florida 33602
P: (813) 221-1366
F: (813) 223-5920
Florida Bar Number: 836760
j.gordon@maneygordon.com
k.ortiz@maneygordon.com
*Counsel for Plaintiffs*

25